UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANTHONY ALLEN MYERS,

          Plaintiff,

v.

TROY BACON, et al.,

          Defendant.

CASE NO. C19-1169-RSM-BAT

**REPORT AND RECOMMENDATION**

Plaintiff Anthony Allen Myers, is currently confined at King County Jail – Regional Justice Center, and filed a 28 U.S.C. § 1983 prisoner civil rights complaint on June 6, 2019. Dkt. 1, 4, 10. The Court declined to serve the complaint because Mr. Myers failed to allege facts sufficient to state a constitutional violation. Dkt. 6. Despite these deficiencies, the Court granted Mr. Myers leave to file an amended complaint. *Id.*

On September 5, 2019, Mr. Myers filed an amended civil rights complaint in which he names several new defendants and attempts to raise new claims. Dkt. 10. Because Mr. Myers' amended complaint remains fatally deficient, the Court recommends that Mr. Myers' amended complaint be dismissed without prejudice prior to service for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A.

REPORT AND RECOMMENDATION - 1

# FACTUAL ALLEGATIONS

In his amended complaint Mr. Myers names the following defendants, all employees at King County Department of Adult and Juvenile Detention (KCDAJD): Troy Bacon (Captain), Kelly N. Washington (Grievance Coordinator), Tamra Culver (Kitchen Staff Supervisor), Chelsea Troutman (cook/baker), Frida Ochoa (cook/baker), Rozell Beleford (correctional officer), John Does #1-4 (correctional officers), Sergeant Garret V. Ferreiro (Sergeant, internal investigations unit), and Katherine Marciana Orth (Sergeant). Dkt. 10, at 1. Mr. Myers alleges at the time of the events giving rise to his claim he was a pretrial detainee. *Id.* He alleges that for a period of time when he first arrived at KCDAJD, he was not given access to mental health treatment or medication for his mental illness of intermittent explosive personality disorder, bipolar, anxiety, and ADHD. *Id.*, at 17. Mr. Myers alleges he was discriminated against by jail staff based upon his mental illness. *Id.* He states he feels he was punished for manifestations of his mental illness that were brought on by "non-stop organized harassment." *Id.*

Mr. Myers states he was arrested on September 16, 2018, and classified as medium security. *Id.*, at 18-21. He states at a classification review on October 25, 2018, he was granted a security override to minimum security with the privilege of becoming a jail trustee. *Id.* Mr. Myers indicates he worked in the AM and PM kitchen without incident for some weeks. *Id.* In November he requested a job change to midnight custodial and on November 23, 2018, was removed and placed back on medium security over "a poor attitude." *Id.* Mr. Myers indicates he remained on medium security classification until December 20, 2018, when he was granted another override at a classification hearing. *Id.* He indicates "classification was willing to grant me the privilege of going to trustee again" but advised him that it was his "last chance." *Id.*

REPORT AND RECOMMENDATION - 2

Mr. Myers states he was assigned to AM kitchen on December 21, 2018, and that "over the next few days groups of inmates would position themselves around me" and "I would be harassed every time I would use the restroom." *Id.* Mr. Myers states that when he asked why this was happening the inmates would always pretend like nothing happened. *Id.* He states "I had no idea that it could have been staff initiated or why." *Id.* He states "after several days of this I would notice a pattern with certain inmates along with defendants Troutman and Ochoa." *Id.* He states he begged for this to stop but all he received in response was laughter. *Id.* Mr. Myers states on December 28, 2018, he noticed defendant Ochoa appeared to be "blowing kisses at me." *Id.* He states that he was confused by this and chose to ignore it. *Id.* He states that after defendant Troutman overheard him relating this "harassment" to another inmate defendant Troutman also "appears" to be blowing kisses at me. *Id.* Mr. Myers states that the inmates would also "chant weird comments, repeat things I talk about, isolate my issues, and try to make me feel like I'm going crazy." *Id.*

Mr. Myers states that he has intermittent explosive personality disorder and when he gets overwhelmed he has outbursts. *Id.* He indicates that due to this harassment he had an outburst and started yelling at defendant Troutman to "leave me alone" and used profanity. *Id.* Mr. Myers indicates Correctional Officer Beleford responded to an officer report which stated he was heard yelling at defendant Troutman "'Chelsea leave me alone, get away from me Chelsea.'" *Id.* Mr. Myers indicates that defendant Beleford asked him what happened and he told him he believed staff was singling him out and harassing him and that defendants Troutman and Ochoa were blowing kisses at him. *Id.* Mr. Myers indicates he was told by another correctional officer that he would remain a trustee until an infraction was served and then at the hearing Classification would decide. *Id.*

Mr. Myers alleges on December 28, 2018, Classification made an entry in his behavior log stating "Inmate was heard yelling 'Chelsea leave me alone. Get away from me Chelsea.' Several inmates reported that this inmate acts mentally at night. Cook Troutman felt uncomfortable and feared for her safety. Several of the inmates stated that this inmate was after cook/baker Troutman. Was removed from 8 south, loss of o/r and placed back into MDM custody. Do not return to wks." *Id.* Mr. Myers states that on December 29, 2018, 14 hours after being placed in restrictive housing, Classification held a "contraindication review" with Sergeant Katherine Marciana Orth. *Id.* Mr. Myers indicates he never received notice of this hearing and was never provided with its decision or instructed how to appeal and no infraction was issued. *Id.* Mr. Myers indicates he was in restrictive housing for 24 hours then moved back to medium security unit without a hearing. *Id.*, at 22.

Mr. Myers indicates he filed several grievances related to this occurrence and that some of his grievances were not responded to, were not responded to in a timely way, or he was not satisfied with the response he received. *Id.*, at 22-27.

Mr. Myers states on February 25, 2019, Sergeant Garret V. Ferreiro called him in for a verbal interview and asked him "a string of questions about [Prison Rape Elimination Act] PREA." *Id.* He claims at that time Sergeant Ferreiro informed him he had "images" of the accusations he made. *Id.* Mr. Myers indicates he told Sergeant Ferreiro that he did not know why the "harassment" occurred and that "I could be severely mistaken. But I don't think it was sexual in nature." *Id.* He states he told Sergeant Ferreiro about his mental illness and that "I think they were messing with my mind or trying to drive me crazy." *Id.* Mr. Myers contends he spoke to Sergeant Ferreiro again in July 2019 and Sergeant Ferreiro told him there were no images or

REPORT AND RECOMMENDATION - 4

video supporting the accusations Mr. Myers made. *Id.* On August 6, 2019, Mr. Myers received a letter from Sergeant Ferreiro which states:

> This letter serves to respond to grievances 0119-074, 0519-012, 0519-031, and 0719-116. These documents relate to your original allegation and complaint of Cook/Baker Ochoa allegedly "blowing kisses" at you on December 28, 2018, and subsequently firing you as a kitchen worker.
> If you recall, when I first spoke to you on February 25, 2019 about your allegations, I believed you may have been the victim of a staff Prison Rape Elimination Act (PREA) violation. During that interview you told me you could be "severely mistaken" and admitted that you had been yelling and that you called a Cook/Baker a "bitch." You also stated you did not believe that there was sexual harassment but that you considered it was "messing with your mind". In addition, you provided information on some of your medical issues which may have affected your perception.
> Records indicate that you were terminated as an inmate worker on November 23, 2018, for a "poor attitude" and your security override was revoked. You were given another chance as an inmate worker on December 20, 2018 and were terminated over this incident on December 28, 2018. Regardless of what any of the 8 South officers may have told you they thought might happen with your case, those are the facts as recorded in your classification record. This evidence does not show that you were singled out; it represents standard practice for inmate workers.
> Shortly after we spoke, I reviewed reports form kitchen staff and reviewed video recordings. These recordings did not show any of the activities you described. I spoke to you later when you were in ITR being transferred to the MRJC, and again while you were enroute to trial. As I told you each time, I do not doubt your sincerity in reporting this incident, have no doubt that the incident has affected you and that you feel unfairly targeted. You asked me to review the video again, but additional video recordings are not available.
> Based on the information available, I have found no evidence that corroborates your allegations, which must be closed as unfounded.

Dkt. 10-1, at 27.

## DISCUSSION

The Court must dismiss the complaint of a prisoner proceeding *in forma pauperis* "at any time if the [C]ourt determines" that the action: (a) "is frivolous or malicious"; (b) "fails to state a claim on which relief may be granted"' or (c) "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(a), (b). A complaint is

REPORT AND RECOMMENDATION - 5

1  frivolous when it has no arguable basis in law or fact. *Franklin v. Murphy*, 745 F.3d 1221, 1228

2  (9th Cir. 1984).

3        Before the Court may dismiss the complaint as frivolous or for failure to state a claim,

4  though, it "must provide the [prisoner] with notice of the deficiencies of his or her complaint and

5  an opportunity to amend the complaint prior to dismissal." *McGucken v. Smith*, 974 F.2d 1050,

6  1055 (9th Cir. 1992); *see also Sparling v. Hoffman Constr., Co., Inc.*, 864 F.2d 635, 638 (9th Cir.

7  1988); *Noll v. Carlson*, 809 F.2d 1446, 1449 (9th Cir. 1987). On the other hand, leave to amend

8  need not be granted "where the amendment would be futile or where the amended complaint

9  would be subject to dismissal." *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991).

10        To state a claim under 42 U.S.C. § 1983, a complaint must allege: (1) the conduct

11  complained of was committed by a person acting under color of state law, and (2) the conduct

12  deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the

13  United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Section 1983 is the appropriate

14  avenue to remedy an alleged wrong only if both of these elements are present. *Haygood v.*

15  *Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985).

16  **A.    Mental Health Treatment**

17        Mr. Myers alleges generally that he received inadequate mental health treatment for a

18  period of time when he first arrived at the KCDAJD. To the extent Mr. Myers intends to bring a

19  separate claim with respect to allegedly inadequate mental health treatment, he fails to allege

20  sufficient facts to support such a claim. Mr. Myers alleges generally that he had to make a

21  request and "wait his turn" for mental health treatment and that his access to mental health

22  treatment was "infrequent" and "inadequate." However, Mr. Myers fails to specify what steps he

23  took to access or notify staff of his mental health issues or needs, when and who he saw for

REPORT AND RECOMMENDATION - 6

1 mental health treatment, what, if any, medications he was being prescribed prior to being

2 arrested, whether medical staff were aware that he was taking medication and when he was

3 ultimately put on medication.  Furthermore, Mr. Myers fails to identify a defendant responsible

4 for the allegedly inadequate mental health care. Mr. Myers does not name any medical providers

5 as defendants or identify any individual he believes to be responsible for the allegedly inadequate

6 care.

7 Although Mr. Myers did not raise the issue of inadequate mental health care specifically

8 in his initial complaint, he was advised by this Court that conclusory allegations of this nature

9 are insufficient to state a claim. Dkt. 6. Accordingly, as Mr. Myers has already been given an

10 opportunity to amend his complaint and was advised that conclusory allegations of this nature

11 were insufficient to state a claim, the Court recommends that this claim be dismissed without

12 prejudice and without leave to amend.

**B.    Harassment, Removal From Trustee Status and Revocation of Security Override**

Mr. Myers alleges he was subjected to harassment by various inmates and by defendants Troutman and Ochoa while he was working as an inmate trustee in the kitchen. However, his allegations are vague and largely speculative. Mr. Myers states groups of inmates would position themselves around me" and "I would be harassed every time I would use the restroom." However, beyond the conclusory assertion of being "harassed", Mr. Myers does not explain what, exactly, the other inmates did that constituted "harassment." Mr. Myers also states he "believes" defendant Troutman and Ochoa blew kisses at him but he does not know why and does not believe their actions were sexually motivated. Mr. Myers also speculates that this "harassment" was some kind of coordinated effort on the part of defendants Troutman and

Ochoa and the other inmate trustees but fails to articulate any facts beyond his bare suspicion to support such a claim.

When a pre-trial detainee challenges some aspect of his pretrial detention, the issue to be decided is the detainee's right to be free from punishment. *Bell v. Wolfish,* 441 U.S. 520, 533, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) ("[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."). Such challenges arise under "the 'more protective' " Fourteenth Amendment Due Process Clause, rather than the cruel and unusual punishment clause of the Eighth Amendment. *Jones v. Blanas,* 393 F.3 d 918, 931 (9th Cir.2004) (quoting *Gary H. v. Hegstrom,* 831 F.2d 1430, 1432 (9th Cir.1987)). However, allegations of verbal harassment and abuse alone fail to state a claim cognizable under 42 U.S.C. § 1983. *Freeman v. Arpaio*, 125 F.3d 732, 738 (9th Cir. 1997) ("As for being subjected to abusive language ... [v]erbal harassment or abuse ... is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.") (citation omitted). Moreover, such harassment, standing alone, does not violate the Fourteenth Amendment's requirement of equal protection under the law. *Freeman,* 125 F.3d at 738 & 738 n. 6 (*overruled on other grounds by Shakur v. Schriro,* 514 F.3d 878, 884 (9th Cir. 2008)) ("[a]lthough not itself rising to the level of a constitutional violation, prison officials' use of abusive language directed at an inmate's religion may be evidence that prison officials acted in an intentionally discriminatory manner," but the verbal abuse alone is "not sufficient to state a constitutional violation").

The Court first notes that Mr. Myers' allegations with respect to harassment by other inmates fails to state a claim as the other inmates are not state actors for purposes of § 1983 liability. Furthermore, Mr. Myers' allegation that defendants Troutman and Ochoa, possibly, blew kisses at him fails to state a constitutional claim under § 1983. Allegations of "harassment"

of such a non-physical nature as are described in Mr. Myers' complaint, without more, fail to state a constitutional claim whether analyzed under the due process clause or equal protection clause of the Fourteenth Amendment.

Mr. Myers also alleges defendants violated his right to equal protection by removing him from his inmate trustee status and revoking his security override because he was mentally ill. The Equal Protection Clause of the Fourteenth Amendment dictates that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. *Plyler v. Doe*, 457 U.S. 202, 216 (1982). An equal protection claim may be based upon a showing that the defendant has intentionally discriminated on the basis of the plaintiff's membership in a protected class, *see e.g., Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001), or upon a showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432 (1985). "Federal courts do not treat the mentally ill as a suspect or quasi-suspect class and thus apply rational-basis review in equal protection claims involving such persons." *Endsley v. Luna,* 2009 WL 3806266, *11 (C.D.Cal.2009); *see also Heller v. Doe by Doe,* 509 U.S. 312, 321, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) ("We have applied rational-basis review in previous cases involving the mentally retarded and the mentally ill."); *see also Tennessee v. Lane,* 541 U.S. 509, 522, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004) ("classifications based on disability violate [equal protection] if they lack a rational relationship to a legitimate governmental purpose").

Mr. Myers was advised of this standard and that he may only make out an Equal Protection Claim if he can show that he was treated differently from other similarly situated

REPORT AND RECOMMENDATION - 9

1  individuals on the basis of his disability and without a rational relationship to a legitimate state

2  purpose. *Lee*, 250 F.3d at 687. He was further advised that for this differential treatment to give

3  rise to a claim under 42 U.S.C. § 1983, he "must show intentional or purposeful discrimination."

4  *Draper v. Rhay*, 315 F.2d 193, 198 (9th Cir. 1963) (inmate failed to show § 1983 violation in

5  absence of "intentional or purposeful discrimination").

6      Here, Mr. Myers alleges he was removed from minimum custody and his job as inmate

7  trustee without infraction based on a behavior entry in his central file indicating he had heard

8  yelling at defendant Troutman, that defendant Troutman indicated she felt unsafe around Mr.

9  Myers, and that there were statements from other inmates that he acts "mentally" at night. Mr.

10 Myers admits yelling at defendant Troutman and fails to allege any facts demonstrating that he

11 was treated differently from any other similarly situated prisoners, i.e., that other prisoners who

12 yelled at their supervisor or around whom staff indicated they felt unsafe, were treated

13 differently. Mr. Myers fails to allege any facts to indicate there was a discriminatory intent or

14 purpose for his removal from inmate worker status and revocation of his security override. *See*

15 *Draper*, 315 F.2d at 198. Mr. Myers also fails to allege any facts showing his removal from

16 inmate worker status and revocation of his security override lacked a rational relationship to a

17 legitimate state purpose. Rather, on the face of the complaint, it appears Mr. Myers' removal

18 from inmate worker status and revocation of his security override were related to legitimate

19 safety and security concerns.

20     Mr. Myers also names defendant Tamra Culver with respect to these claims. Mr. Myers

21 appears to name defendant Culver solely because she was the kitchen supervisor and defendants

22 Ochoa and Troutman worked under her. As Mr. Myers' claims against defendant Culver are

23 intended to be derivative of his claims against defendants Ochoa and Troutman, they fail for the

REPORT AND RECOMMENDATION - 10

same reasons. Additionally, the Court notes, that Mr. Myers' claim against defendant Culver is premised upon a theory of supervisory liability alone which is not a basis for § 1983 liability. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Accordingly, the Court recommends that Mr. Myers' equal protection and due process conditions of confinement claim related to his alleged harassment, removal from trustee status and revocation of security override, be dismissed without prejudice for failure to state a claim. Mr. Myers was previously advised of the deficiencies in his complaint and given an opportunity to amend but his complaint remains deficient. As it appears that further leave to amend would be futile, the Court recommends such leave be denied.

**C.       Grievance Process**

Mr. Myers appears to allege that his Due Process rights were violated because some of his grievances were not responded to, there were delays in the grievance process, and he was dissatisfied with the responses to his grievances. Mr. Myers names defendants Bacon, Washington, and Ferriero, with respect to his grievance process claims.

Even during incarceration, prisoners retain their Fourteenth Amendment due process protections. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003). In adopting prison regulations, "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). However, there is no constitutional right to a prison grievance system. *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.1988); *Ramirez*, 334 F.3d at 860; *Stewart v. Block*, 938 F.Supp. 582 (C.D.Cal.1996); *Hoover v. Watson*, 886 F.Supp. 410 (D.Del.1995) (*aff'd,* 74 F.3d 1226). If the state elects to provide a grievance mechanism, alleged violations of the procedures does not give rise to § 1983 claims. *Silva v. Gregoire*, 2007 WL 1814073 at *6 (W.D. Wash. 2007); *Hoover v. Watson*, 886 F.Supp.

410, 418 (D.Del.1995) (*aff'd,* 74 F.3d 1226); *Brown v. Dodson,* 863 F.Supp. 284, 285 (W.D.Va. 1994); *Allen v. Wood*, 970 F.Supp. 824, 832 (E.D.Wash. 1997) (The grievance process is an internal prison process for handling prison complaints and does not involve substantive rights).

Because Mr. Myers lacks a separate constitutional entitlement to any grievance procedure, his claims with respect to the grievance process generally and against any defendants for failing to respond to, failing to properly respond to, or failed to properly process certain grievances, standing alone, are insufficient to state a claim. *See Harris v. James*, 2017 WL 5198196, at *4, 16-cv-05044-BHS-DWC (W.D. Wash. 2017) ("a stand-alone claim based on a deprivation of the grievance procedure does not implicate due process.").

Mr. Myers was given an opportunity to amend his complaint to address this deficiency. Mr. Myers' amended complaint largely reiterates his complaints regarding the grievance process and the failure to respond to, failure to properly respond to, or failure to properly process certain grievances. Accordingly, the Court recommends Mr. Myers' claims with respect to the grievance process be dismissed without prejudice for failure to state a claim upon which relief may be granted. As it appears that further leave to amend would be futile the Court recommends such leave be denied.

**D.    Removal From Inmate Worker/Trustee Status and Revocation of Security Override Without Notice of Hearing**

Mr. Myers alleges after the incident with defendant Troutman, he was removed from inmate worker/trustee status, his security override was revoked, and he was returned to medium security classification without notice of a hearing. Mr. Myers appears to allege this violated his right to due process.

Pretrial detainees have a substantive due process right against restrictions that amount to punishment." *Valdez v. Rosenbaum*, 302 F.3d 1039, 1045 (9th Cir. 2002). They also "have a

right to procedural due process before they are subjected to more severe conditions of confinement than other detainees." *Shorter v. Baca*, 895 F.3d 1176, 1190 (9th Cir. 2018). However, to establish a substantive due process violation, a plaintiff must prove (1) that his pretrial housing classification caused him "to suffer some harm or 'disability,' " and (2) that the "purpose" of the classification was "to punish." *Demery v. Arpaio*, 378 F.3d 1020, 1030 (9th Cir. 2004) (citing *Bell v. Wolfish*, 441 U.S. 520, 538 (1979)). If he cannot show that his housing conditions had both the "purpose and effect" of unconstitutional punishment, no procedural protections are constitutionally required. *Mitchell v. Dupnik*, 75 F.3d 517, 524 (9th Cir. 1996). Furthermore, "[n]ot every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." *Bell*, 441 U.S. at 537. For a "'harm or disability' to be cognizable under the constitution, it 'must either significantly exceed, or be independent of, the inherent discomforts of confinement.' " *Endsley v. Luna*, 750 F. Supp. 2d 1074, 1100 (C.D. Cal. 2010) (quoting *Demery*, 378 F.3d at 1030).

Mr. Myers does not claim that his loss of inmate worker status and loss of security override (resulting in return to medium security classification) either significantly exceeded, or was independent of, the inherent discomforts of confinement. In fact, Mr. Myers acknowledges that he was classified as medium security when he entered the jail, that he was subsequently afforded the privilege of working as an inmate worker/trustee and was given a custody override to minimum security status for that purpose. Mr. Myers does not claim the conditions of his confinement in medium security significantly exceed or are independent of the inherent discomforts of confinement or are outside the "normal incidents of jail life." *Rhoden v. Carona*, 2010 WL 4449711, at *19 (C.D. Cal. Aug. 24, 2010). General losses of "freedom of choice and privacy are inherent incidents of confinement" in the jail context and that "such detention

REPORT AND RECOMMENDATION - 13

interferes with the detainee's understandable desire to live as comfortably ... and with as little restraint as possible ... does not convert the conditions or restrictions of detention into 'punishment.' " *Bell*, 441 U.S. at 537.

Furthermore, on the face of the complaint it appears Mr. Myers lost his security override and returned to medium custody classification for the legitimate governmental objectives of jail security, safety, and order. *See Bell*, 441 U.S. at 538-39. To prove punitive purpose, Mr. Myers must show an express intent to punish, *See Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004), or an implied intent based on a restriction either "not reasonably related to a legitimate governmental objective" or "excessive in relation to the legitimate governmental objective." *Doe v. Kelly*, 878 F.3d 710, 714 (9th Cir. 2017). Mr. Myers does not claim or present any facts to demonstrate an express punitive intent because, by his own account, jail officials expressed that he lost his security override because he yelled and cursed at defendant Troutman. Moreover, Mr. Myers fails to allege any facts to show implied punitive intent because jails have a legitimate and nonpunitive interest in "maintaining security and order." *Pierce v. County of Orange*, 526 F.3d 1190, 1205 (9th Cir. 2008) (quoting *Bell*, 441 U.S. at 540 n.23). Yelling and cursing at jail staff jeopardizes jail security, safety, and order.

Furthermore, for the same reasons that he fails to state a claim of a substantive due process violation, Mr. Myers also cannot state a claim of a procedural due process violation. Mr. Myers' allegations that he was removed from inmate worker/trustee status, lost his security override and returned to medium custody housing after the incident with defendant Troutman do not implicate a liberty interest entitling him to procedural due process protections. A pretrial detainee like Mr. Myers "has no constitutional right to a particular classification status." *Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987) (citing *Moody v. Daggett*, 429 U.S.

REPORT AND RECOMMENDATION - 14

78, 88 n.9 (1976)). Even pretrial detainees "placed in administrative segregation for security reasons" have no constitutional right to a hearing, *Miramontes v. Chief of Dep't of Corrs.*, 86 Fed. App'x 325, 325 (9th Cir. 2004) unless that segregation "imposes an 'atypical and significant hardship upon the inmate in relation to the ordinary incidents of [jail] life.' " *East v. Lewis*, 2010 WL 375064, at *4 (C.D. Cal. Jan. 25, 2010) (quoting *Sandin*, 515 U.S. at 484).

In order to demonstrate a protected liberty interest requiring procedural due process protections, Mr. Myers would have to show that the conditions of his confinement in medium custody housing "presented an atypical and significant hardship." *Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007). As discussed above, Mr. Myers does not allege or present any facts to indicate that he experienced "atypical and significant" harms in medium security housing while a pretrial detainee. Because Mr. Myers cannot show he had a protected liberty interest in his classification status, and does not claim or allege any facts to indicate his return to medium security housing imposed an atypical and significant hardship, he cannot state a claim for deprivation of his right to due process.

Mr. Myers was previously given an opportunity to amend but his complaint remains deficient. Accordingly, the Court recommends Mr. Myers' claims be dismissed without prejudice for failure to state a claim upon which relief may be granted. Moreover, given the nature of this claim, it appears that further leave to amend would be futile and the Court recommends such leave be denied.

**E.      Defendants Ferreiro and Beleford**

Mr. Myers also names corrections officer Rozell Beleford as a defendant. However, Mr. Myers alleges only that he told defendant Beleford about the alleged harassment by defendants Ochoa and Troutman and that defendant Beleford failed to independently report what Mr. Myers

REPORT AND RECOMMENDATION - 15

had told him. However, Mr. Myers clearly grieved this issue and he fails to explain what responsibility, if any, defendant Beleford had to report what Mr. Myers had told him independently or how his failure to do so constitutes a constitutional violation.

Mr. Myers also names defendant Ferreiro and alleges that, in the course of investigating his claim against defendant Ochoa and Troutman as a potential PREA complaint, he initially told Mr. Myers "he had images of the accusations [he] made" but later denied having such images. Mr. Myers also alleges defendant Ferreiro intentionally delayed concluding his investigation until after Mr. Myers criminal trial had concluded.

The Court is unable to determine, based on Mr. Myers' allegations, what constitutional claim or claims he is attempting to allege against defendant Ferreiro and Beleford in his amended complaint. Mr. Myers did not name defendants Ferreiro and Beleford in his initial complaint but he was advised that in many instances, the allegations of his complaint were vague or confusing and that in order to state a claim under 42 U.S.C. § 1983, a complaint must establish "the violation of a right secured by the Constitution and the laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Accordingly, Mr. Myers was instructed to write out short, plain statements in his amended complaint telling the Court: (1) the constitutional right he believes was violated; (2) the name of the person who violated the right; (3) exactly what that person did or failed to do; (4) how the action or inaction of that person is connected to the violation of his constitutional rights; and (5) what specific injury he suffered because of that person's conduct. *See Rizzo v. Goode*, 423 U.S. 362, 371–72 (1976). Mr. Myers was instructed he must repeat this process for every person he names as a defendant.

REPORT AND RECOMMENDATION - 16

Despite the Court's instructions, Mr. Myers' amended complaint fails to offer more than vague and conclusory allegations against defendants Ferreiro and Beleford and thus remains deficient. Accordingly, the Court recommends that Mr. Myers' claims with respect to defendants Ferreiro and Beleford be dismissed without prejudice for failure to state a claim, and that further leave to amend be denied as it appears such amendment would be futile.

**F.     Dismissal of Deficient Claims Without Leave to Amend**

In general, a pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint cannot be cured by amendment. *Noll v. Carlson,* 809 F.2d 1446, 1448 (9th Cir.1987). Nevertheless, "[u]nder Ninth Circuit case law, district courts are only required to grant leave to amend if a complaint can possibly be saved. Courts are not required to grant leave to amend if a complaint lacks merit entirely." *Lopez v. Smith,* 203 F.3d 1122, 1129 (9th Cir.2000). Where further amendment would be futile, the court may exercise its discretion and deny leave to amend. *Lopez,* 203 F.3d at 1129. The trial court's discretion to refuse leave to amend is particularly broad when the court has previously granted leave to amend. *Griggs v. Pace Am. Group, Inc.,* 170 F.3d 877, 879 (9th Cir. 1999).

Mr. Myers was previously given the opportunity to amend his complaint and, as discussed above, his complaint remains deficient. The Court concludes that further leave to amend would be futile in this case and recommends that the complaint be dismissed without prejudice and without leave to amend under 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A.

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order. Therefore a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **October 10, 2019.** The Clerk should note the matter for **October 11, 2019**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed **8 pages**. The failure to timely object may affect the right to appeal.

DATED this 24th day of September, 2019.

BRIAN A. TSUCHIDA
United States Magistrate Judge